IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| PHILLIPPE, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|        v. | )    1:08cv1167 (JCC) |
| | ) |
| WILLETT et al., | ) |
| | ) |
|     Respondents. | ) |

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a motion to dismiss or, in the alternative, for summary judgment submitted by Respondents Col. J.C. Willett, Deborah Achim, James T. Hayes, Jr., Julie Myers, and Michael Chertoff (collectively, "Respondents").[1]  For the reasons stated below, the Court will grant Respondents' motion for summary judgment.

### **I.  Background**

This habeas corpus petition arises out of the confinement of James Saint Phillippe ("Petitioner") pending his deportation to Haiti.  Petitioner has been in the custody of

---

[1] The Petition states that Col. J.C. Willett is the Superintendent of Pamunkey Regional Jail, where Petitioner is being held; Deborah Achim is the Field Office Director for Immigration and Customs Enforcement in Washington, D.C.; James T. Hayes, Jr. is the Director of Immigration and Customs Enforcement's Headquarters Office of Detention and Removal in Washington, D.C.; Julie Myers is the Assistant Secretary of Immigration and Customs Enforcement; and Michael Chertoff is the Secretary of the Department of Homeland Security.  The Petition alleges that each Respondents is, in some manner, a custodian of Petitioner.  *See* Pet. at ¶¶ 4-9.

United States Immigration and Customs Enforcement ("ICE") since June 7, 2007.  An immigration judge's order that he be removed from the country (the "Removal Order") became final on February 28, 2008, when the Board of Immigration Appeals dismissed his appeal of the Removal Order.  Pet. at ¶¶ 11, 13.  Petitioner submitted his Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, on November 7, 2008.  The allegations in the Petition are as follows.

Petitioner is a Haitian citizen who has lived in the United States as a Lawful Permanent Resident since 1986.  *Id.* at ¶ 11.  On May 31, 2006, Petitioner was convicted of using a communications system to facilitate a sexual offense with a minor under Va. Code Ann. § 18.2-374.3.  *Id.* at ¶ 12.  ICE took him into custody on June 7, 2007, seven months after his release from prison.  *Id.* at ¶¶ 12-13.  Petitioner concedes that his offense made him subject to deportation.  *Id.* at ¶ 12.  His Removal Order became final on February 28, 2008, but he still remains in ICE custody because ICE has been unable to deport him to Haiti.  *Id.* at ¶¶ 13, 15.

Petitioner has been protesting his prolonged detention and asking ICE to release him under supervision since September 2008.  *Id.* at ¶ 16.  He has made his requests using the appropriate detainee request forms and has provided a permanent address at which he could reside.  *Id.*  Petitioner claims to have

exhausted all administrative remedies available to him.  Pet. at ¶ 10.  Respondents do not challenge this contention or raise any argument based on a failure to exhaust administrative remedies.

In September and again in October of 2008, Petitioner met with a Haitian consular officer at the ICE office in Fairfax, Virginia.  At no point did anyone contest or doubt the authenticity of his Haitian citizenship.  *Id.* at ¶¶ 17-18.  At the October meeting, the consular officer told Petitioner and the ICE officers present that Haiti would not accept deportees for the foreseeable future.  *Id.* at ¶ 18.  Petitioner claims that he will be unable to obtain travel documents from the Embassy of Haiti for the foreseeable future and that, without the intervention of the courts, he faces indefinite detention by ICE.  *Id.* at ¶¶ 20, 25.  He claims to have a strong network of family support in New York.  *Id.* at ¶¶ 21-22.

The Petition states three claims for relief.  First, Petitioner claims that his continued detention violates § 241(a)(6) of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), and is unconstitutional.  Second, again citing *Zadvydas*, Petitioner states that his continued detention violates his substantive due process rights.  Third, Petitioner claims that his continued detention violates his procedural due process rights and that "[t]here is no administrative mechanism in place"

that would allow him to bring his claim of unlawful continuing detention.  *Id.* at ¶ 36.

Respondents moved for dismissal or, in the alternative, for summary judgment.  In support of their motion, they filed an affidavit by an ICE detention and deportation officer, the Virginia conviction and sentencing order for Petitioner's state crime, and the Board of Immigration Appeals' decision denying Petitioner's appeal.  Resps.' Mot. at Ex. 1-3.  The affidavit states that the United States (the "Government") initially scheduled Petitioner for deportation in August 2008, but that his removal was delayed by a series of hurricanes that struck Haiti between August and September 2008.  *Id.* at Ex. 1, ¶ 4.  It also states that deportations to Haiti are set to resume next month, in March 2009.  *Id.* at Ex. 1, ¶ 5.

In his response, filed January 23, 2009, Petitioner does not contest the Respondents' factual assertion that deportations to Haiti will resume in March.  Respondents submitted a reply brief on January 23.  This motion is before the Court.

### II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a motion to dismiss, "the material allegations of the complaint are

taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Where "matters outside the pleading are presented to and not excluded by the court," a 12(b)(6) motion may be converted to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  In such an instance, the court is required to give all parties "reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see also Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976).  A court need not provide formal notice that it plans to convert a motion to dismiss into a motion for summary judgment, though, when the possibility of conversion is apparent from the face of the motion – for example, when the motion is captioned as a motion for summary judgment in the alternative and affidavits are attached.  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61

(4th Cir. 1998); *see also Carter v. Balt. County, Md.*, 39 Fed. Appx. 930, 933 (4th Cir. 2002).

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). Once a motion for summary judgment is properly made and supported, the opposing party bears the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### III. Analysis

The first question before the Court is whether to treat Respondents' motion as a motion to dismiss or as a motion for summary judgment. Respondents captioned their motion as one for summary judgment in the alternative. They also attached a supporting affidavit and other outside evidence. Petitioner, who

is represented by counsel, was on notice of the possibility that the Court would rule on the alternative motion for summary judgment. *Laughlin*, 149 F.3d at 260-61. In his memorandum in response to Respondents' motion, Petitioner appears to recognize that the Government plans to resume deportations to Haiti in March 2009.[2] Pet.'s Resp. at 2; Resps.' Mot. at Ex. 1. He does not contest any other facts testified to in the affidavit submitted by Respondents. In light of Petitioner's notice of the possibility that the Court would construe the pending motion as one for summary judgment, and considering the absence of any disputed facts, this case is ripe for summary judgment.

   A. Legal Framework

Detention of a deportee after the entry of an administrative order of removal is governed by 8 U.S.C. § 1231(a). This section provides the Attorney General with a "removal period" of up to 90 days to remove a deportee from the country. *Id.* at § 1231(a)(1)(A). Several events can trigger the start of the "removal period." *See id.* § 1231(a)(1)(B). The "removal period" for Petitioner began on February 28, 2008, "[t]he date the order of removal bec[ame] administratively final." *Id.* at § 1231(a)(1)(B)(i).

---

[2] At the motion hearing, Respondents' counsel, a Government attorney, stated his understanding that a grant of summary judgment in favor of Respondents would not bar Petitioner from seeking judicial relief if his deportation is again delayed for a significant amount of time.

The Government detains the deportee during the "removal period" pending deportation.  *Id.* at § 1231(a)(2).  The statute presumes that the Government will deport the detained individual before the 90-day "removal period" ends.  Generally, when an "alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  *Id.* at § 1231(a)(3).  For "inadmissible or criminal aliens," however, the statute allows the Government to continue detention "beyond the removal period."  *Id.* at § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that the broad language of § 1231(a)(6) did not bar petitioners from seeking a writ of habeas corpus under 28 U.S.C. § 2241.  *Zadvydas*, 533 U.S. at 687.[3]  To avoid the constitutional difficulties inherent in a grant of authority to detain deportees indefinitely, the Court explained that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that aliens' removal from the United States."  *Id.* at

---

[3] *Zadvydas* dealt with one category of aliens to which 8 U.S.C. § 1231(a)(6) applies: those found "removable" from the United States.  533 U.S. at 682.  *Clark v. Martinez*, a subsequent decision, extended the holding in *Zadvydas* to all categories of persons detained under § 1231(a)(6), including inadmissible aliens.  *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

8

689.  "It does not," the Court emphasized, "permit indefinite detention."  *Id.*

To determine whether the detention of a deportee beyond the 90-day "removal period" under § 1231(a)(6) comports with the Constitution, the Court held, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal."  *Id.* at 699.  The Court recognized a six-month detention as presumptively reasonable under § 1231(a)(6).  *Id.* at 701.  After six months have elapsed since the beginning of the "removal period," and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  The Government could continue to confine an alien "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

*Zadvydas* establishes a two-pronged inquiry to determine whether § 1231(a)(6) allows detention beyond the 90-day "removal period."  First, a petitioner must show that he has been held for more than six months after the issuance of the final administrative order of removal.  Second, the petitioner must show that there is no significant likelihood of removal in the reasonably foreseeable future.  *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002); *see also Ali v. Barlow*, 446 F.

9

Supp. 2d 604, 610 (E.D. Va. 2006). Because Petitioner bears this burden, ICE can continue to detain a deportee "*until* it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future." *Bonitto v. B.I.C.E.*, 547 F. Supp. 2d 747, 754 (S.D. Tex. 2008) (emphasis in original).

The *Zadvydas* Court posited a sliding scale for what "reasonably foreseeable future" means: the longer the post-removal order confinement, the more stringent a court should be in determining what constitutes the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 48 (D. D.C. 2002) (finding that, for a deportee detained for more than three years, "reasonably foreseeable future" meant the point at which removal would be "truly imminent").

*Zadvydas* sets out the framework under which the continued detention of deportees pursuant to § 1231(a)(6) comports with the Constitution. Thus, all of Petitioner's claims for relief depend on the two-pronged inquiry promulgated by the Supreme Court.

B. <u>Showing That Petitioner Was Held for More Than 6 Months</u>

The undisputed facts show that Petitioner has been confined beyond the presumptively-reasonable six month time period under *Zadvydas*. Petitioner does not dispute the Government's statement that charter flights to Haiti will resume

in March 2009 and that Petitioner "will most assuredly be removed from the U.S. as soon as removals to Haiti resume again in March." Gov't Mot., Ex. 1 at ¶¶ 6-7. The question before the Court, then, is whether Petitioner has made a showing "that there is no significant likelihood of removal in the reasonably foreseeable future," and, if so, whether the Government has sufficiently rebutted that showing. *Zadvydas*, 533 U.S. at 701.

    C. The Likelihood of Removal in the "Reasonably Foreseeable Future"

Courts have held that removal was "reasonably foreseeable" when, for example, ICE was taking active steps to secure removal at some point in the future, which included seeking diplomatic assistance from the United States Department of State, *see Ali v. Barlow*, 446 F. Supp. 2d 604, 611 (E.D. Va. 2006), or when a nation had indicated that it would accept an alien, even though it was uncertain about when deportation could take place because of political unrest, *see Nima v. Ridge*, 286 F. Supp. 2d 469, 474-75 (E.D. Pa. 2003). Removal in the present case is even more obviously "reasonably foreseeable" than it was in either *Ali v. Barlow* or *Nima v. Ridge*. The undisputed facts show that Petitioner's removal will take place in the very near future. In addition, there is no uncertainty about Petitioner's nationality or whether Haiti will accept him when deportations resume.

Courts have found that removal was not "reasonably foreseeable" in situations where no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time. *See Nima*, 286 F. Supp. 2d at 475.

None of these situations is analogous to that presented here. The United States and Haiti have agreed to resume deportations next month, in March 2009. There is no dispute over Petitioner's citizenship that would prevent his removal to Haiti. Indeed, Petitioner was slated for removal in August, which shows that he already has been found eligible for removal to Haiti.

The Court finds that Petitioner has failed to show that removal is not "reasonably foreseeable." The undisputed facts establish that deportations to Haiti will re-commence in the very near future, at which time the Petitioner will be deported. The Court will grant Respondents' motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, the Court will grant Respondents' motion for summary judgment.

An appropriate Order will issue.

February 18, 2009  /s/
Alexandria, Virginia  James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE